**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

BRIAN C.,

                        Plaintiff,

    v.                                                  5:20-CV-534
                                                             (DJS)
COMMISSIONER OF SOC. SEC.,

                        Defendant.
_____

**APPEARANCES:**                                    **OF COUNSEL:**

LAW OFFICE OF STEVEN R. DOLSON, PLLC    STEVEN R. DOLSON, ESQ.
Attorney for Plaintiff
126 North Salina Street, 3rd Floor
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.                NATASHA OELTJEN, ESQ.
OFFICE OF REG'L GEN. COUNSEL
Attorney for Defendant
J.F.K. Federal Building - Room 625
Boston, MA 02203

**DANIEL J. STEWART
United States Magistrate Judge**

### MEMORANDUM-DECISION AND ORDER[1]

      Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled for purposes of disability insurance benefits. Dkt. No. 7. Currently before the Court are

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 4 & General Order 18.

Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 7 & 8. For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion is granted. The Commissioner's decision is affirmed.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1971. Dkt. No. 6, Admin. Tr. ("Tr."), p. 17. Plaintiff reported that he has at least a high school education and is able to communicate in English. Tr. at pp. 38 & 176. He has past work experience as a firefighter and fire insurance inspector. Tr. at pp. 40-41. Plaintiff alleges disability due to bulged discs in his neck "causing pain and restriction," shoulder pain, weakness and aching in his left arm, upper back pain between his shoulder blades, and lower back pain which radiates down his left leg. Tr. at pp. 64-65.

### B. Procedural History

Plaintiff applied for disability and disability insurance benefits on April 26, 2017. Tr. at p. 64. He alleged a disability onset date of February 12, 2016. *Id.* at p. 65. Plaintiff's application was initially denied on June 7, 2017, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at p. 10. Plaintiff appeared at a hearing before ALJ Michael D. Burrichter on January 15, 2019 at which he and a vocational expert testified. Tr. at pp. 30-63. On February 6, 2019, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security

Act. Tr. at pp. 7-19. On April 3, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-6.

### C. The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2022 and that he had not engaged in substantial gainful activity since February 12, 2016, the alleged onset date. Tr. at p. 12. Second, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease and stenosis of the lumbar spine; left-sided carpal tunnel syndrome and ulnar nerve lesion; left shoulder osteoarthritis/tendinitis/tendinopathy/cysts; and obesity. *Id.* Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). Tr. at p. 13. Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a), except that Plaintiff can lift and carry up to ten pounds occasionally and lift or carry less than ten pounds frequently, stand and/or walk for two hours out of an eight-hour workday, and sit for six hours out of an eight-hour workday. Tr. at p. 14. Additionally, the ALJ found that Plaintiff should never climb ladders, ropes, and scaffolds, can never reach overhead with his left extremity, and should never work at unprotected heights or with moving mechanical parts. *Id.* at pp. 14-15. However, he

can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, can frequently reach in all directions except overhead with his dominant left upper extremity, and can frequently handle, finger, and feel with the dominant left upper extremity.  *Id.*  Finally, the ALJ found that Plaintiff can frequently reach overhead and in all other directions with his right upper extremity, and can occasionally work in vibration.  *Id.*

Fifth, the ALJ found that Plaintiff was unable to perform any past relevant work.  Tr. at p. 17.  Sixth, the ALJ found that Plaintiff was categorized as a "younger individual," had at least a high school education, and is able to communicate in English.  *Id.*  Seventh, the ALJ found that there was work existing in significant numbers in the national economy that Plaintiff could perform.  Tr. at p. 18.  The ALJ, therefore, concluded that Plaintiff is not disabled.  Tr. at pp. 18-19.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a

finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

Plaintiff presents two questions for the Court's review. Dkt. No. 7, Pl.'s Mem. of Law, p. 1. First, Plaintiff contends that the ALJ committed reversible error by failing to employ the proper legal standard in evaluating his symptoms. *Id.* at pp. 5-7. Next, Plaintiff alleges that the ALJ committed reversible error by failing to include specific limitations related to the head and neck within the residual functional capacity finding. *Id.* at pp. 7-10. In response, Defendant asserts that the ALJ employed the proper analysis for evaluating Plaintiff's symptoms and limitations, and that his RFC determination was supported by substantial evidence. Dkt. No. 8, Def.'s Mem. of Law, pp. 4-14.

### A. Evaluation of Plaintiff's Symptoms

Plaintiff first claims that the ALJ committed reversible error by failing to employ the proper legal standard in evaluating his subjective symptoms. Pl.'s Mem. of Law at p. 5. The Commissioner has established a two-step inquiry that the ALJ must follow in order to properly evaluate a claimant's contention of pain. 20 C.F.R. §§ 404.1529(b) & 404.1529(c); Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); *Meadors v. Astrue*, 370 Fed. Appx. 179, 183 (2d Cir. 2010).

> First, the ALJ must determine whether the claimant suffers from a "medically determinable impairment that could be reasonably expected to produce" the pain alleged. Second, the ALJ must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's pain contentions are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry.

*Meadors v. Astrue*, 370 Fed. Appx. at 183-84.  On this point, Plaintiff's argument is a narrow one.  Plaintiff contends that the ALJ erred in his analysis because he "skip[ped] the first step of the analysis."  Pl.'s Mem. of Law at p. 6.

The ALJ here engaged in the proper credibility determination.  As Plaintiff acknowledges, the ALJ correctly identified and stated the proper two-step process for evaluating Plaintiff's symptoms.  Pl.'s Mem. of Law at p. 6; Tr. at p. 15.  The ALJ first identified Plaintiff's subjective reports of pain:

> The claimant complains of shoulder, neck, and back pain, affecting his abilities to lift, stand, walk, sit, climb stairs, squat, reach, and use his hands . . . he cannot sit or stand for long without experiencing pain . . . and constantly experiences pain on both sides of his neck. The pain in his arms, particularly his left arm, make it difficult to lift and carry objects or raise his arms.

Tr. at p. 15.

He then listed Plaintiff's medically determinable impairments: degenerative disc disease and stenosis of the cervical and lumbar spine; left-sided carpal tunnel syndrome and ulnar nerve lesion; left shoulder osteoarthritis/tendinitis/tendinopathy/cysts; and obesity.  *Id.*  These medically determinable impairments are also consistent with the medically determinable impairments identified earlier in the decision.  Tr. at p. 12.  The ALJ then proceeded to evaluate the degree to which those impairments could be reasonably expected to produce Plaintiff's pain, noting that "[m]agnetic resonance imaging scans (MRIs) and x-rays of his cervical and lumbar spine shows stenosis and degenerative changes, corroborating the claimant's various diagnoses of back pain

8

(Exhibits 3F/3-5; 17F/24; 21F/6-7; 22F/1-2)." Tr. at p. 15. Additionally, the ALJ described an MRI of Plaintiff's left shoulder from September 2017, which "corroborated diagnoses of osteoarthritis and shoulder pain with cysts." *Id.*

In support of his position, Plaintiff relies principally on *Meadors v. Astrue*, a case which is factually distinguishable. The ALJ in *Meadors* did not engage in the proper legal analysis to allow the court to conduct a meaningful review. *Meadors v. Astrue*, 370 Fed. Appx. at 184. The Second Circuit in *Meadors* held that it was

> unclear whether the ALJ determined at the first step of [his] credibility determination that [Appellant's] impairments could not reasonably be expected to produce the pain . . . alleged, or whether [he] determined at the second step that [Appellant's] allegations regarding the intensity, persistence and limiting effects of [her] pain . . . were not consistent with the objective medical or other evidence.

*Id.* That is not the case here. Although the ALJ may have failed to use the exact language typically employed by ALJs in this section, it is clear from his decision that he found that Plaintiff had medically determinable impairments that could be reasonably expected to produce the pain alleged.

It is also clear from the face of the ALJ's decision that his decision was instead based upon the second step of the credibility determination, finding that Plaintiff's allegations regarding the intensity, persistence, and limiting effects of his pain were not consistent with the objective medical and other evidence. The ALJ found that "the record does not support the claimant's allegations of disabling impairments. While diagnostic impairments corroborate the existence of severe impairments, those studies

9

describe those impairments in unremarkable terms, including being 'mild' (Exhibits 4F/130; 17F/24)." Tr. at p. 16. The ALJ noted that Plaintiff presented with insignificant symptoms, citing to medical records and treatment notes which described that Plaintiff appeared to be in "mild" pain, which he treated with Naproxen. Tr. at pp. 298-99. Later treatment notes indicated that he had full range of motion of his neck, with no pain down his arms. Tr. at p. 478. Other medical evaluations described "[n]ormal strength of the deltoids, biceps, triceps, wrist extensor, interossei, and grip." Tr. at p. 555. At a May 17, 2017 appointment, Plaintiff rated the intensity of his neck and left shoulder pain as a 3 or 4 out of 10. Tr. at pp. 561-62. On June 20, 2017, Plaintiff rated the intensity of his pain as a 6, but the examining doctor noted that he had "[d]ecent neck flexion" and bilateral upper extremity range of motion. Tr. at p. 565. On August 30, 2017, Plaintiff rated his pain as a 4 out of 10. Tr. at p. 573. On December 21, 2017, Plaintiff rated his neck and left shoulder pain as a 3-4 out of 10, Tr. at p. 581, and described the quality of the pain as an "ache" that was exacerbated by increased physical activity, Tr. at p. 582. On April 3, 2018, Plaintiff rated his pain as a 3 out of 10, or 5 to 6 "at its worst." Tr. at p. 596. At a September 21, 2018 appointment, Plaintiff noted that his pain was exacerbated by activity, but alleviated by rest. Tr. at p. 602. His treatment notes also stated that surgery had not been recommended and a regimen of "conservative care" was indicated. Tr. at p. 603. It is clear to the Court that the ALJ here found that while Plaintiff's alleged pain is reasonably consistent with the medical conditions from which he suffers, the intensity and persistence of the alleged pain are unsubstantiated,

rendering his subjective allegations not credible.  This was not error.  *C.f. Said v. Colvin*, 2016 WL 8671843, at *14 (E.D.N.Y. Sept. 30, 2016) (where the ALJ did not answer the threshold question of whether there was a medically determinable impairment that could reasonably be expected to produce the alleged pain or symptoms, it was unclear to the reviewing court "whether the ALJ found that: (1) the plaintiff's alleged pain reasonably is not consistent with the medical conditions from which she suffers; or (2) that the alleged pain is consistent with plaintiff's medical conditions, but the intensity and persistence of the alleged pain are unsubstantiated, making her subjective allegations not credible.").

## B. The RFC's Restrictions

Next, Plaintiff claims that the ALJ's decision is not supported by substantial evidence because the residual functional capacity finding "lacks restrictions on neck and head movement." Pl.'s Mem. of Law at p. 7.  First, it is noted that the only recommended restrictions on neck and head movement cited to by Plaintiff were the result of an opinion from a non-treating medical provider, Dr. Ferraraccio.  *See id.* at pp. 8-9.

"'There is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations,' and the ALJ is free to disregard identified limitations that are not supported by the evidence of record." *Torbicki v. Berryhill*, 2018 WL 3751290, at *5 (W.D.N.Y. Aug. 8, 2018) (citing *Pellam v. Astrue*, 508 Fed. Appx. 87, 89 (2d Cir. 2013)).  Here, the ALJ made clear that he found Dr. Ferraraccio's opinions only partially persuasive to the extent the opinions were consistent with the

11

medical evidence in the record. Tr. at p. 16. Dr. Ferraraccio examined Plaintiff on October 18, 2016 and again on August 8, 2017. Tr. at pp. 465 & 543. The ALJ gave Dr. Ferraraccio's opinion partial weight, finding that that his manipulative limitations were generally consistent with and supported by the evidence of record. Tr. at p. 16. However, the ALJ determined that Dr. Ferraraccio's significant right-shoulder limitations for Plaintiff were internally inconsistent with his report, which indicated that Plaintiff could lift only five pounds with both his left and right arms. *Id.* Moreover, Dr. Ferraraccio's restrictions are not consistent with other medical evidence in the record. Other records from medical appointments noted that Plaintiff had full range of motion of his neck, Tr. at p. 478, and "decent" neck flexion. Tr. at p. 565. The ALJ also chose to incorporate other restrictions related to the cervical spine including "never climbing ladders, ropes, and scaffolds, never hazards, and occasional work in vibration due to degenerative disk disease and stenosis of the cervical and lumbar spine . . ." Tr. at p. 16. The ALJ was free to disregard limitations, such as the limitations on head and neck movement, that are not consistent with the evidence in the medical record. *Torbicki v. Berryhill*, 2018 WL 3751290, at *5.

  Moreover, even if the ALJ erred in discounting Dr. Ferraraccio's opinion that Plaintiff had a limitation against holding his neck in a fixed position, such error was harmless. *Danielle S. v. Commissioner of Social Security*, 2021 WL 231511, at *4 (W.D.N.Y. Jan. 25, 2021). The representative occupations of document preparer (DOT#249.587-018), call out operator (DOT #237.367-014), and semiconductor bonder

(DOT# 726.685-066), all of which the VE opined an individual with the RFC found by the ALJ would be capable of performing, do not require holding the neck in a fixed position. This was confirmed by the vocational expert after Plaintiff's counsel posed a question about whether those jobs could still be performed "[i]f the person were unable to hold their head or neck in a fixed position." Tr. at p. 62. The vocational expert responded: "Those jobs do not require the fixed position. Therefore, those jobs could still be performed." *Id.*

Consequently, even if the ALJ had incorporated Dr. Ferraraccio's opinion regarding Plaintiff's ability to hold his neck in a fixed position into his RFC finding, it would not have changed the conclusion that Plaintiff was not disabled as defined in the Act. *See Dukes v. Comm'r of Soc. Sec.*, 2020 WL 5651610, at *5 (W.D.N.Y. Sept. 23, 2020) (finding harmless error where "even had the ALJ adopted every limitation identified by [the medical source], it would not have changed the conclusion that Plaintiff was capable of work as a cashier II, which is sufficient to demonstrate that she is not disabled as defined in the Act"). As a result, any such error alleged is harmless.

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED** and the Complaint is **DISMISSED**; and it is further

**ORDERED,** that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated: May 14, 2021
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge